UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GLOBAL OIL TOOLS, INC. | CIVIL ACTION |
| VERSUS | NO. 16-16372 |
| EXPEDITORS INTERNATIONAL OF WASHINGTON, INC. ET AL. | SECTION "R" (1) |

## ORDER AND REASONS

Plaintiff Global Oil Tools, Inc. moves for a preliminary injunction.[1] For the following reasons, the motion is denied.

## I. BACKGROUND

Plaintiff sells tools for oil and gas exploration.[2] In early 2016, plaintiff was in negotiations to sell a large number of tools, worth $2.4 million, as well as intellectual property to an overseas buyer.[3] In anticipation of this sale, plaintiff packed these tools and intellectual property into two shipping containers, and contracted with defendants Andrea Merzario, S.A. and Expeditors International of Washington, Inc. (Expeditors) to arrange for the shipment of these containers to Constanta, Romania.[4] Expeditors arranged

---

[1] R. Doc. 70.
[2] R. Doc. 70-1 at 2.
[3] R. Docs. 82-16, 82-17; R. Doc. 70-1 at 2, 7.
[4] R. Doc. 70-1 at 2-3; R. Doc. 82-17.

for the containers to sail from New Orleans on March 12, 2016, aboard a ship operated by defendant Hapag-Lloyd (America), LLC.[5] The containers arrived in New Orleans from Houma, Louisiana on March 8,[6] but plaintiff (through Expeditors) requested that Hapag-Lloyd delay the trans-Atlantic shipment for two weeks.[7]

The containers were then scheduled to sail in late March aboard the M/V BAVARIA. On March 22, plaintiff instructed Expeditors to delay the shipment again.[8] Expeditors relayed this instruction to Hapag-Lloyd,[9] but Hapag-Lloyd failed to relay it to defendant Ports America Louisiana, L.L.C. (Ports America), the stevedoring company responsible for loading containers onto the M/V BAVARIA.[10] The ship, with plaintiff's containers on board, sailed on March 28.[11]

After the ship sailed, plaintiff acquiesced in the discharge of its containers at Constanta.[12] The containers arrived at Constanta on April 23,

---

[5] R. Doc. 77-2.
[6] R. Doc. 70-1 at 3.
[7] R. Doc. 76-1 at 5-6.
[8] R. Doc. 70-1 at 3-4.
[9] *Id.* at 12.
[10] R. Doc. 76-1 at 1-2.
[11] *Id.* at 15. Hapag-Lloyd discovered the mistake on the same day, *see* R. Doc. 70-1 at 17, and plaintiff learned of the mistaken shipment shortly thereafter, *id.* at 18.
[12] R. Doc. 70-1 at 5; R. Doc. 82-10. The containers were transshipped at Cagliari, Italy. R. Doc. 70-1 at 33.

2016.¹³ The bill of lading, issued by plaintiff on May 30, identifies Romarftrans Group Srl. (RGS) as plaintiff's intermediate consignee.¹⁴ RGS is Andrea Merzario's agent in Romania.¹⁵ Acting through RGS, and pursuant to plaintiff's instructions, Andrea Merzario moved the containers to a bonded storage facility in June 2016.¹⁶ The sale of plaintiff's tools and intellectual property was never consummated, and the containers remain in Constanta.

Plaintiff sued Expeditors and Zurich American Insurance Company (Zurich), Expeditors' liability insurer, on November 15, 2016, for damages and declaratory relief.¹⁷ Plaintiff added Hapag-Lloyd, Ports America, and Andrea Merzario as defendants on March 13, 2017.¹⁸ Several defendants have filed cross-claims and counterclaims.

Plaintiff now moves for a preliminary injunction against all defendants.¹⁹ The motion first requests that the Court order defendants to

---

13     R. Doc. 70-1 at 33.
14     R. Doc. 76-1 at 16.
15     *See* R. Doc. 82-11 (letter of attorney authorizing RGS, on behalf of Andrea Merzario, to represent plaintiff's interests in Romania).
16     R. Docs. 82-13, 82-14.
17     R. Doc. 1.
18     R. Doc. 16. Plaintiff also sued, and later voluntarily dismissed, New Orleans Terminal, LLC. *See* R. Doc. 41.
19     R. Doc. 70.

preserve and protect the containers and their cargo.[20] Plaintiff also seeks to enjoin defendants from interfering with the shipment of the containers back to New Orleans.[21]

## II. LEGAL STANDARD

A party may obtain a preliminary injunction only if: (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that the movant will suffer irreparable harm if the injunction is not granted; (3) the threatened injury to the movant outweighs the potential injury to the defendant; and (4) the preliminary injunction will not disserve the public interest. *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003). When evaluating whether the movant has satisfied these requirements, the Court must remember that "[a] preliminary injunction is an extraordinary remedy which courts grant only if the movant has clearly carried the burden as to all four elements." *Id.* Granting a preliminary injunction is "the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

---

[20] *Id.* at 13.
[21] *Id.* at 14.

4

The central prerequisite for injunctive relief "is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Id.* at 629 (quoting 11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2017)). "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). This risk of harm must be "more than mere speculation," *id.* at 601; "[a] presently existing actual threat must be shown," 11A Wright & Miller, *Federal Practice and Procedure* § 2948.1. The Court has "no discretion to grant [preliminary injunctive] relief absent an adequate showing of likely irreparable harm." *Id.*

## III. DISCUSSION

The Court will not issue a preliminary injunction in this case because plaintiff has made no showing of irreparable harm. Plaintiff asserts that without a preliminary injunction, it faces the loss of over $2,000,000 in inventory as well as its intellectual property. This loss, plaintiff avers, will cause it to go out of business.[22]

---

[22] R. Doc. 70-1 at 8.

First, plaintiff has not shown an injunction is necessary to preserve and protect its property. There is no evidence that the property is at risk of physical damage while warehoused in Romania. While some damage from salinization was discovered during a limited inspection of the containers, this damage occurred during transit—not at port.[23] There is also no evidence that plaintiff's intellectual property is at risk of misappropriation. Plaintiff therefore fails to show that irreparable harm is likely absent an injunction mandating preservation and protection of its property.

Likewise, plaintiff has not shown an injunction is necessary to prevent defendants from interfering with the shipment of the containers back to New Orleans. Plaintiff asserts that defendants have "hijacked" its property and now "demand a ransom for its return."[24] These assertions have no basis in the record. As late as March 4, 2016, plaintiff communicated its intention to ship the containers to Constanta, Romania later that month.[25] Plaintiff then instructed Expeditors to hold the containers in New Orleans.[26] Expeditors relayed this instruction to Hapag-Lloyd.[27] But Hapag-Lloyd neglected to tell Ports America not to load the containers onto the M/V BAVARIA. After the

---

[23] *Id.*
[24] R. Doc. 70 at 10.
[25] R. Doc. 82-6 at 1.
[26] R. Doc. 70-1 at 3-4.
[27] *Id.* at 12.

containers mistakenly sailed, plaintiff consented to their discharge in Constanta.[28] In June 2016, plaintiff instructed Andrea Merzario to move the containers to a bonded storage facility in Constanta, where they remain.[29] This chain of events shows that none of the defendants deliberately shipped the containers without plaintiff's approval. And once the mistaken shipment was discovered, defendants did not move the containers anywhere without plaintiff's consent.

The containers and their cargo now appear to be in the possession of RGS, Andrea Merzario's agent in Romania and plaintiff's intermediate consignee.[30] The containers are physically located in a bonded storage facility operated by S.C. UMEX S.A. Constanta.[31] There is no evidence that any defendant is holding the containers "hostage," as plaintiff asserts.[32] Neither is there any evidence that any defendant is interfering, or is likely to interfere, with the shipment of the containers back to New Orleans.

---

[28] *Id.* at 5; R. Doc. 82-10.
[29] R. Docs. 82-13, 82-14.
[30] R. Doc. 76-1 at 16; R. Doc. 82-11.
[31] *See* R. Doc. 82 at 8; R. Doc. 82-15 (indicating that the containers were inspected at the UMEX terminal in Constanta on June 30, 2016).
[32] R. Doc. 70-4 at 4. Indeed, the only defendant that has any control over the containers is Andrea Merzario.

It appears that the only source of disagreement among the parties is the question of who should pay upfront for the return shipment.[33] In November 2017, the parties discussed dividing these costs among themselves, but did not reach an agreement.[34] To the extent plaintiff seeks to require defendants to contribute to the costs of shipment, such a requirement is not an appropriate subject of injunctive relief. *See Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction], are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs] heavily against a claim of irreparable harm." (alterations in original) (quoting *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975))). Plaintiff could simply pay the shipping costs itself and then seek to recover the costs in a damages suit. *See Justin Indus., Inc. v. Choctaw Sec., L.P.*, 920 F.2d 262, 269 (5th Cir. 1990) (noting that the availability of a "self-help remedy" suggests that plaintiff "has not necessarily suffered an injury that is incapable of repair without judicial intervention").

---

[33] *See* R. Doc. 82-1.
[34] *See id.*

Indeed, the only non-financial obstacle to returning the containers to New Orleans appears to be a customs issue. According to plaintiff, the Romanian customs authority will not permit the intellectual property in the containers to leave Romania because this property is not included in the bill of lading.[35] Of course, the Court's injunctive power does not extend to the Romanian customs authority. And "injunctive relief may properly be refused when it would interfere with [an]other nation's sovereignty." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 716 (2d Cir. 2004). Furthermore, plaintiff had ample opportunity to review the bill of lading, but did not add intellectual property to it.[36] Because there is no evidence that *defendants* are interfering, or will likely interfere, with the shipment of plaintiff's containers back to New Orleans, plaintiff fails to show that irreparable harm is likely without an injunction.

Moreover, plaintiff waited over a year and a half since the containers first shipped, and a year since this suit began, to seek a preliminary injunction. This delay belies its claim of irreparable harm. *See Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006); *see also* 11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 ("A long

---

[35] R. Doc. 70-1 at 8; R. Doc. 82 at 4.
[36] *See* R. Doc. 82-12.

delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.").

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion for a preliminary injunction.

New Orleans, Louisiana, this  2nd   day of January, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE