UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLOBAL OIL TOOLS, INC.                                CIVIL ACTION

VERSUS                                                NO. 16-16372

EXPEDITORS INTERNATIONAL OF                           SECTION "R" (1)
WASHINGTON, INC. ET AL.

## ORDER AND REASONS

Before the Court are defendant Hapag-Lloyd (America), LLC's and Ports America Louisiana, L.L.C.'s motions for summary judgment.[1] For the following reasons, the Court grants the motions. The *Himalaya* clause in the relevant bill of lading forecloses the liability of Hapag-Lloyd and Ports America to plaintiff. Ports America is further entitled summary judgment on two crossclaims against it because it was not negligent.

## I.     BACKGROUND

Plaintiff sells tools for oil and gas exploration.[2] In early 2016, plaintiff was in negotiations to sell a large number of tools, allegedly worth $2.4 million, as well as intellectual property, to an overseas buyer.[3]  In

---

1   R. Docs. 54, 88.
2   R. Doc. 87-2 at 2.
3   *Id.* at 2-3; R. Doc. 16 at 9 ¶ 28.

anticipation of the sale, plaintiff packed these tools and intellectual property into two shipping containers, and contracted with defendant Expeditors International of Washington, Inc. (Expeditors) to arrange for the shipment of these containers to Romania.[4] Expeditors arranged for the containers to sail from New Orleans on March 12, 2016, aboard a ship operated by Hapag-Lloyd.[5] The containers arrived in New Orleans from Houma, Louisiana on March 8,[6] but plaintiff (through Expeditors) requested that Hapag-Lloyd delay the trans-Atlantic shipment for two weeks.[7]

The containers were then scheduled to sail in late March aboard the M/V BAVARIA. On March 22, plaintiff instructed Expeditors to delay the shipment again.[8] Expeditors relayed this instruction to Hapag-Lloyd, but Hapag-Lloyd failed to relay it to defendant Ports America, the stevedoring company responsible for loading containers onto the M/V BAVARIA.[9] The ship, with plaintiff's containers on board, sailed on March 28.[10]

---

[4] R. Doc. 87-2 at 2-3; R. Doc. 87-3 (shipper's letter of instructions to Expeditors).
[5] R. Doc. 112-7 at 1.
[6] R. Doc. 87-2 at 3.
[7] R. Doc. 76-1 at 5-6.
[8] R. Doc. 87-2 at 4.
[9] *See* R. Doc. 88-2 at 1-2, 10; R. Doc. 112-7 at 13-14 (Hapag-Lloyd booking confirmation reflecting shipment date of April 2).
[10] R. Doc. 112-7 at 16-17 (Hapag-Lloyd booking confirmation reflecting that plaintiff's containers were loaded in error on the M/V BAVARIA and sailed on March 28). Hapag-Lloyd discovered the mistake on the same day,

After the ship sailed, plaintiff acquiesced in the discharge of its containers at Constanta, Romania.[11] The containers were transshipped in Cagliari, Italy, and arrived at Constanta on April 23, 2016.[12] A bill of lading, dated March 28, was approved by plaintiff on May 27.[13] The bill of lading identifies Romarftrans Group Srl. (RGS) as plaintiff's intermediate consignee.[14] RGS is Andrea Merzario, S.A.'s agent in Romania.[15] Acting through RGS, and pursuant to plaintiff's instructions, Andrea Merzario moved the containers to a bonded storage facility in June 2016.[16] The sale of plaintiff's tools and intellectual property was never consummated, and the containers remain in Constanta. Some tools were purportedly damaged during transit.[17]

---

*see id.*, and plaintiff learned of the mistaken shipment shortly thereafter, R. Doc. 87-2 at 5.
[11] R. Doc. 87-2 at 8; R. Doc. 82-10.
[12] R. Doc. 112-5.
[13] R. Doc. 112-4 (authenticated bill of lading); R. Doc. 112-3 at 13 (email in which plaintiff approved bill of lading). Plaintiff contends that the bill of lading is dated September 28, 2016. Although the date on the document is somewhat difficult to read, no reasonable juror, examining the document closely, would read the date as "09/28/16" rather than "03/28/16."
[14] R. Doc. 112-4 at 2.
[15] *See* R. Doc. 82-11 (letter of attorney authorizing RGS, on behalf of Andrea Merzario, to represent plaintiff's interests in Romania).
[16] R. Docs. 82-13, 82-14.
[17] R. Doc. 87-2 at 6; R. Doc. 87-7.

Plaintiff sued Expeditors and Zurich American Insurance Company, Expeditors' liability insurer, on November 15, 2016, for damages and declaratory relief.[18] Plaintiff added Hapag-Lloyd, Ports America, and Andrea Merzario as defendants on March 13, 2017.[19] Several defendants have filed crossclaims and counterclaims.[20] Hapag-Lloyd now moves for summary judgment on plaintiff's claims,[21] and Ports America moves for summary judgment on plaintiff's claims and Expeditors' and Andrea Merzario's crossclaims.[22] Plaintiff and Expeditors have filed oppositions,[23] but Andrea Merzario has not.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material

---

[18] R. Doc. 1.
[19] R. Doc. 16. Plaintiff also sued, and later voluntarily dismissed, New Orleans Terminal, LLC. *See* R. Doc. 41.
[20] *See* R. Docs. 26, 33, 50.
[21] R. Doc. 54.
[22] R. Doc. 88.
[23] R. Docs. 87, 91, 92.

4

fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

### A. The Bill of Lading Bars Plaintiff's Claims Against Hapag-Lloyd and Ports America

Hapag-Lloyd and Ports America seek summary judgment on plaintiff's claims against them based on the *Himalaya* clause in the bill of lading. A bill of lading is a contract between a shipper and a carrier for transportation of goods. *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18-19 (2004) ("A bill

of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage."). The contract "enunciates the responsibility of the carrier to deliver enumerated goods to a specified location."[24] *Interocean S.S. Corp. v. New Orleans Cold Storage & Warehouse Co.*, 865 F.2d 699, 703 (5th Cir. 1989). As contracts of adhesion, bills of lading are "strictly construed against the carrier." *Id.* (quoting *Allied Chem. v. Companhia de Navegacao*, 775 F.2d 476, 482 (2d Cir. 1985)). But "contracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties." *Kirby*, 543 U.S. at 397.

Here, Expeditors issued the bill of lading for plaintiff's containers, although Expeditors did not actually own or operate the ship that transported the containers. In this transaction, Expeditors acted as a non-vessel operating common carrier—a type of intermediary between the shipper (plaintiff) and the vessel-operating common carrier (Hapag-Lloyd). *See GIC Servs., L.L.C. v. Freightplus USA, Inc.*, 866 F.3d 649, 657 (5th Cir.

---

[24] A nonnegotiable bill of lading directs the carrier to deliver the goods to a specific person, called a consignee. *See* 1 Thomas Schoenbaum, *Admiralty and Maritime Law* § 10-11 (5th ed. 2017)). A negotiable bill, on the other hand, "functions as a document of title" and directs the carrier to deliver the goods to the holder of the bill. *Id.* (emphasis omitted). Expeditors' bill of lading in this case states that it is nonnegotiable. R. Doc. 112-4 at 2.

7

2017). With respect to plaintiff, Expeditors played the role of carrier; with respect to Hapag-Lloyd, however, Expeditors played the role of shipper. *See* 1 *Admiralty and Maritime Law* § 10-7.

In its capacity as carrier, Expeditors owed a number of statutory duties to plaintiff under the Carriage of Goods by Sea Act (COGSA). Most importantly, COGSA requires the carrier to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." 46 U.S.C. § 30701 note sec. 3(2). In other words, and subject to several exceptions, Expeditors was "liable to [plaintiff] if 'anything happen[ed] to the cargo during the voyage.'" *GIC Servs.*, 866 F.3d at 657 (quoting *Prima U.S. Inc. v. Panalpina, Inc.*, 223 F.3d 126, 129 (2d Cir. 2000)). The bill of lading issued by Expeditors incorporates the provisions of COGSA.[25] *See* 46 U.S.C. § 30701 note sec. 13.

The bill of lading also includes a *Himalaya* clause, which reads:

> Merchant undertakes that no claim or allegation shall be made against any Person or Vessel whatsoever other than Carrier, including the Carrier's servants or agents, any independent contractors (at any time) and their servants or agents, Participating Carriers, and all others by whom the whole or any

---

[25] R. Doc. 88-2 at 18. This clause is known as the clause paramount. *See Brown & Root, Inc. v. M/V Peisander*, 648 F.2d 415, 420 (5th Cir. 1981). Although COGSA applies of its own force only "from the time when the goods are loaded on to the time when they are discharged from the ship," 46 U.S.C. § 30701 note sec. 1(e), the clause paramount provides that "COGSA shall govern before loading" as well. R. Doc. 88-2 at 18.

part of the Carriage, whether directly or indirectly, is procured, performed, or undertaken, which imposes or attempts to impose upon any such Person or Vessel any liability whatsoever in connection with the Good or the Carriage . . . .[26]

In other words, plaintiff covenanted not to sue any party involved in the transportation of its shipping containers, except Expeditors. Thus, under the plain language of the bill of lading, plaintiff relinquished any right to sue Hapag-Lloyd or Ports America.

Plaintiff offers several arguments to resist the application of the *Himalaya* clause. First, plaintiff argues that the *Himalaya* clause does not apply because the bill of lading was not issued until after the erroneous shipment.[27] Relatedly, plaintiff argues that the bill of lading fails for lack of consideration because it was executed after shipment.[28] But courts routinely enforce bills of lading issued after goods are damaged during carriage. *See, e.g.*, *Uncle Ben's Int'l Div. of Uncle Ben's, Inc. v. Hapag-Lloyd Aktiengesellschaft*, 855 F.2d 215, 217 (5th Cir. 1988) (rejecting argument that because "the bills of lading were issued after the containerization, they

---

[26] R. Doc. 88-2 at 30. The clause further extends "all exemptions, limitations of, and exonerations from liability provided by Law or by" the bill of lading "to all agents, servants, employees, representatives, Participating Carriers (including road, rail, water and air carriers), [and] stevedores." *Id.* Such limitations of liability include those provided by COGSA.
[27] R. Doc. 87 at 17-18.
[28] *Id.* at 20.

cannot apply to the claims in question"); *Luckenbach S.S. Co. v. Am. Mills Co.*, 24 F.2d 704, 705 (5th Cir. 1928).

In *Luckenbach*, for example, a fire destroyed a number of cots during loading. The bill of lading, which was "in accordance with its standard form," exempted the carrier from liability for damages because of fire. *Luckenbach*, 24 F.2d at 705. The shipper argued that this exemption did not apply because the bill of lading was not issued until after the fire. But the Fifth Circuit enforced the bill of lading, holding that the bill "evidenced the contract the parties entered into at the time the goods were delivered and accepted." *Id.* At that time, "an implied understanding arose from common business experience that the carrier would issue such bill of lading as it was its custom to issue to shippers in the usual course of its business." *Id.* Here, as in *Luckenbach*, the standard bill of lading reflected the contract of carriage that the shipper and carrier entered into when the goods were delivered to the carrier. The bill of lading is not unenforceable merely because it was issued after the erroneous shipment.

Second, plaintiff argues that the bill of lading is unenforceable because plaintiff never signed or approved it.[29] But a bill of lading need not be signed by a shipper to be enforceable, so long as the shipper had notice of the bill of

---

[29] *Id.*

lading's terms. *See, e.g.*, *Am. Ry. Express Co. v. Lindenburg*, 260 U.S. 584, 590-91 (1923); *Royal Air, Inc. v. AAA Cooper Transp., Inc.*, 395 F. Supp. 2d 436, 440 (W.D. La. 2005); *Vesta Forsikring AS v. Mediterranean Shipping Co., SA*, No. 00-1938, 2001 WL 1660255, at *4-5 (S.D. Tex. Aug. 10, 2001). The record indicates that plaintiff had notice of the bill of lading's terms and explicitly approved the bill of lading by email on May 27, 2016.[30]

Third, plaintiff argues that the covenant not to sue in the *Himalaya* clause is unenforceable because it violates public policy.[31] Specifically, plaintiff points to 46 U.S.C. § 30704, which provides: "A carrier may not insert in a bill of lading . . . a provision avoiding its liability for loss or damage arising from negligence or fault in loading, stowage, custody, care, or proper delivery. Any such provision is void." Plaintiff argues that the covenant not to sue Hapag-Lloyd violates this provision because Hapag-Lloyd is a carrier within the meaning of 46 U.S.C. § 30704. Plaintiff also suggests that Hapag-Lloyd violated COGSA by not issuing a bill of lading itself.

Hapag-Lloyd did issue a bill of lading, which properly designated Expeditors as the shipper.[32] *See* 1 *Admiralty and Maritime Law* § 10-7

---

[30] R. Doc. 112-3 at 13.
[31] R. Doc. 92 at 6.

[32] R. Doc. 112-6.

11

("With respect to the vessel and her owner, the [non-vessel operating common carrier] is a shipper or customer."). But Hapag-Lloyd does not rely on this bill of lading in its summary judgment motion. Instead, Hapag-Lloyd relies on the *Himalaya* clause in Expeditors' bill of lading.

At least two circuit courts, as well as one section of this Court, have enforced *Himalaya* clauses that include covenants not to sue subcontractors.[33] *See Sompo Japan Ins. Co. v. Norfolk S. Ry. Co.*, 762 F.3d 165 (2d Cir. 2014); *Fed. Ins. Co. v. Union Pac. R.R. Co.*, 651 F.3d 1175 (9th Cir. 2011); *Royal SMIT Transformers BV v. HC Bea-Luna M/V*, No. 16-14647, 2017 WL 2364362 (E.D. La. May 31, 2017). The Ninth Circuit regarded such a covenant not to sue as "an enforcement mechanism rather than a reduction of 'the carrier's obligations to the cargo owner below what COGSA guarantees.'" *Fed. Ins.*, 651 F.3d at 1180 (quoting *Fireman's Fund Ins. Co. v. M/V DSR Atl.*, 131 F.3d 1336, 1339 (9th Cir. 1997)); *see also id.* at 1179-80 ("The Supreme Court has distinguished between impermissible

---

[33] While neither the Fifth Circuit nor the Supreme Court has addressed a covenant not to sue in a *Himalaya* clause, the Supreme Court in *Kirby* enforced a classic *Himalaya* clause, which extends a carrier's limitation of liability under COGSA to the carrier's subcontractors. The Court held that "[t]he plain language of the Himalaya Clause indicates an intent to extend the liability limitation broadly," and found "no reason to contravene the clause's obvious meaning." 543 U.S. at 31-32.

12

contracts that reduce the carrier's obligations and enforceable contracts that affect only the 'mechanisms' of enforcing a shipper's rights." (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 535 (1995)). Likewise, the Second Circuit treated a covenant not to sue as "simply an ordering mechanism." *Sompo*, 762 F.3d at 182. Because the bill of lading preserved the shipper's right to sue the carrier and the carrier's right to sue the allegedly negligent subcontractor, the Second Circuit held that the covenant not to sue did not violate public policy. *Id.* at 183. The Court finds this reasoning persuasive, and holds that the covenant not to sue contained in the *Himalaya* clause is enforceable.

Finally, plaintiff argues that the *Himalaya* clause does not apply because Ports America and Hapag-Lloyd acted without authority, and outside any contractual relationship, when they erroneously loaded plaintiff's containers.[34] But the covenant not to sue covers any party "by whom . . . any part of the Carriage . . . is . . . performed." Hapag-Lloyd and Ports America clearly performed part of the carriage as contemplated by the bill of lading, which the Court has already deemed enforceable. Accordingly, the *Himalaya* clause bars plaintiff's claims against Hapag-Lloyd and Ports

---

34    R. Doc. 87 at 21; R. Doc. 92 at 4.

America.  Hapag-Lloyd and Ports America are entitled summary judgment on plaintiff's claims against them.

## B. There Is No Evidence of Ports America's Negligence

Ports America further seeks summary judgment on plaintiff's claims, and Expeditors' and Andrea Merzario's crossclaims, on the ground that there is no evidence of wrongdoing by Ports America.[35] Specifically, Ports America asserts that it properly loaded plaintiff's containers as instructed by Hapag-Lloyd and did not damage the containers.

Plaintiff's claims against Ports America sound in negligence.[36] "To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (quoting *In re Cooper/T. Smith*, 929 F.2d 1073,

---

[35] R. Doc. 88 at 4-8.
[36] Expeditors and Andrea Merzario assert crossclaims of breach of contract, breach of warranty or duty, willful or intentional conduct, and conversion, in addition to negligence and gross negligence, against Ports America and other defendants. R. Doc. 26 at 13 ¶ 15; R. Doc. 50 at 3 ¶ 9. But there is no support, either in the pleadings or in the record, for any claim against Ports America other than negligence. Moreover, neither Expeditors nor Andrea Merzario presents any basis for Ports America's liability in response to Ports America's summary judgment motion. The Court therefore confines its analysis to the negligence claim against Ports America.

14

1077 (5th Cir. 1991)). Plaintiff asserts that Ports America breached its duty to inspect plaintiff's containers; to inform Hapag-Lloyd of the condition in which the containers were loaded; and to determine whether loading was proper, whether there was proper documentation, and whether the containers and goods had been inspected and insured.[37]

A stevedore must "use reasonable care and ordinary diligence in the loading and stowage of cargo." *Falcon Constr. Co. v. Bacon Towing Co.*, 613 F. Supp. 221, 223 (S.D. Tex. 1985). This duty may include alerting the vessel of any known risk to the cargo. *See, e.g.*, *F.J. Walker Ltd. v. Motor Vessel Lemoncore*, 561 F.2d 1138, 1148 (5th Cir. 1977) (noting that a stevedore "must at least inform the vessel of a serious hazard being created" as a result of unloading cargo). But the parties point to no authority for the proposition that a stevedore has a duty to inspect shipping containers that it did not pack, or to ensure that the containers are properly inspected, insured, and documented. Nor is there any evidence suggesting that Ports America had any reason to believe that the containers had been improperly packed.[38]

Moreover, Ports America was entitled to follow the loading instructions of Hapag-Lloyd. Ports America had no contractual relationship

---

[37] R. Doc. 92 at 2-3.
[38] *See* R. Doc. 88-2 at 1 (declaration by Ports America employee stating that Ports America did not pack plaintiff's containers).

with either Expeditors or plaintiff, and it relied solely on Hapag-Lloyd's loading instructions.[39] There is no evidence suggesting that Ports America had any reason to believe that it should not load the containers onto the M/V BAVARIA. Accordingly, Ports America is entitled summary judgment on plaintiff's claims, and Expeditors' and Andrea Merzario's crossclaims, against it.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Hapag-Lloyd's and Ports America's motions for summary judgment. Plaintiff's claims against Hapag-Lloyd and Ports America are DISMISSED WITH PREJUDICE. Expeditors' and Andrea Merzario's crossclaims against Ports America are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __2nd__ day of April, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[39] *Id.* at 1-2.