UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLOBAL OIL TOOLS, INC.                          CIVIL ACTION

VERSUS                                          NO. 16-16372

EXPEDITORS INTERNATIONAL                        SECTION M (1)
OF WASHINGTON, INC. AND
ZURICH AMERICAN
INSURANCE COMPANY

## ORDER & REASONS

Before the Court are:

(1)    a motion filed by Hapag-Lloyd (America), LLC ("Hapag-Lloyd") to dismiss
crossclaims of Expeditors International of Washington, Inc. ("Expeditors") and Andrea
Merzario, S.A. ("Merzario") on the basis of a forum selection clause, and alternatively, for
partial summary judgment to limit recoverable damages,[1] to which Expeditors responds in
opposition,[2] and in further support of which Hapag-Lloyd replies;[3]

(2)    a motion filed by Expeditors and its insurer, Zurich American Insurance Company
("Zurich") (collectively, "Expeditors"), to dismiss the claims of plaintiff Global Oil Tools, Inc.
("Plaintiff") on the basis of another forum selection clause,[4] to which Hapag-Lloyd[5] and Plaintiff
respond in opposition,[6] and in further support of which Expeditors replies;[7]

---

[1] R. Doc. 171.
[2] R. Doc. 184.  Merzario did not file an opposition memorandum.
[3] R. Doc. 191.
[4] R. Doc. 195.
[5] R. Doc. 200.
[6] R. Doc. 203.
[7] R. Doc. 204.

(3)  Zurich's motion for summary judgment on Plaintiff's first-party insurance claims,[8] to which Plaintiff responds in opposition;[9] and

(4) Expeditors' motion for partial summary judgment to limit recoverable damages,[10] to which Plaintiff responds in opposition,[11] and in further support of which Expeditors replies.[12]

Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

I.    **BACKGROUND**

This case involves a shipping arrangement gone awry.  The pertinent facts were recited by the Court in a previous Order & Reasons:[13]

> Plaintiff sells tools for oil and gas exploration.  In early 2016, plaintiff was in negotiations to sell a large number of tools, allegedly worth $2.4 million, as well as intellectual property, to an overseas buyer.  In anticipation of the sale, plaintiff packed these tools and intellectual property into two shipping containers, and contracted with defendant Expeditors International of Washington, Inc. (Expeditors) to arrange for the shipment of these containers to Romania. Expeditors arranged for the containers to sail from New Orleans on March 12, 2016, aboard a ship operated by Hapag-Lloyd.  The containers arrived in New Orleans from Houma, Louisiana on March 8, but plaintiff (through Expeditors) requested that Hapag-Lloyd delay the trans-Atlantic shipment for two weeks.

> The containers were then scheduled to sail in late March aboard the M/V BAVARIA.  On March 22, plaintiff instructed Expeditors to delay the shipment again.  Expeditors relayed this instruction to Hapag-Lloyd, but Hapag-Lloyd failed to relay it to defendant Ports America, the stevedoring company responsible for loading containers onto the M/V BAVARIA.  The ship, with plaintiff's containers on board, sailed on March 28.

> After the ship sailed, plaintiff acquiesced in the discharge of its containers at Constanta, Romania.  The containers were transshipped in Cagliari, Italy, and arrived at Constanta on April 23, 2016.  A bill of lading, dated March 28, was approved by plaintiff on May 27.  The bill of lading identifies Romarftrans Group

---

[8] R. Doc. 172.
[9] R. Doc. 183.
[10] R. Doc. 120.
[11] R. Doc. 159.
[12] R. Doc. 169.
[13] This matter was originally assigned to a different section of this Court and was realloted to this section upon the confirmation of the undersigned.  R. Doc. 126.

Srl. (RGS) as plaintiff's intermediate consignee. RGS is Andrea Merzario, S.A.'s agent in Romania. Acting through RGS, and pursuant to plaintiff's instructions, Andrea Merzario moved the containers to a bonded storage facility in June 2016. The sale of plaintiff's tools and intellectual property was never consummated, and the containers remain in Constanta. Some tools were purportedly damaged during transit.

Plaintiff sued Expeditors and Zurich American Insurance Company, Expeditors' liability insurer, on November 15, 2016, for damages and declaratory relief. Plaintiff added Hapag-Lloyd, Ports America, and Andrea Merzario as defendants on March 13, 2017. Several defendants have filed crossclaims and counterclaims.[14]

Some months ago Hapag-Lloyd moved for summary judgment on Plaintiff's claims, and Ports America moved for summary judgment on Plaintiff's claims and Expeditors' and Merzario's crossclaims.[15] As to Plaintiff's claims, Hapag-Lloyd and Ports America argued that the *Himalaya* clause in Expeditors' bill of lading precluded Plaintiff from asserting claims against anyone except Expeditors for issues related to the shipping.[16]

In ruling on these summary judgment motions, the Court found that Expeditors, as a non-vessel operating common carrier, acted as the carrier vis-à-vis Plaintiff, and the shipper with respect to Hapag-Lloyd.[17] Expeditors issued a bill of lading to Plaintiff that incorporated the provisions of the Carriage of Goods by Sea Act ("COGSA"), and included the following *Himalaya* clause:

Merchant undertakes that no claim or allegation shall be made against any Person or Vessel whatsoever other than Carrier, including the Carrier's servants or agents, any independent contractors (at any time) and their servants or agents, Participating Carriers, and all others by whom the whole or any part of the Carriage, whether directly or indirectly, is procured, performed, or undertaken, which imposes or attempts to impose upon any such Person or Vessel any liability whatsoever in connection with the Good or the Carriage. ...[18]

---

[14] R. Doc. 113 at 1-4 (internal citations omitted). Pertinent to the motions now before the Court, defendant Expeditors and defendant Merzario filed crossclaims against defendant Hapag-Lloyd.

[15] R. Docs. 54 & 88.

[16] *Id.*

[17] R. Doc. 113 at 7-8. Obversely, Plaintiff was the shipper vis-à-vis Expeditors, and Hapag-Lloyd was the vessel operating common carrier as to Expeditors.

[18] *Id.* at 8-9.

The Court granted the motions holding that "[t]he *Himalaya* clause in the relevant bill of lading forecloses the liability of Hapag-Lloyd and Ports America to plaintiff," and that Ports America was "entitled to summary judgment on two crossclaims against it because it was not negligent."[19] The Court further found (1) that it was irrelevant that the bill of lading was issued after the erroneous shipment because "courts routinely enforce bills of lading issued after goods are damaged during transit,"[20] and (2) "that plaintiff had notice of the bill of lading's terms and explicitly approved the bill of lading by email on May 27, 2016."[21]

## II. LAW & ANALYSIS

### A. Hapag-Lloyd's Motion to Dismiss (R. Doc. 171)

Having used the bill of lading's *Himalaya* clause to shut the door on its direct exposure to Plaintiff, Hapag-Lloyd has now filed a motion to dismiss Expeditors' crossclaims seeking to enforce a forum selection clause in the sea waybill Hapag-Lloyd (as vessel operating common carrier) issued to Expeditors (as shipper),[22] which states:

### 24. Law and Jurisdiction

Except as otherwise provided specifically herein any claim or dispute arising under the Sea Waybill shall be governed by the law of the Federal Republic of Germany and determined in the Hamburg courts to the exclusion of the jurisdiction of the courts of any other place. …[23]

Hapag-Lloyd argues that the forum selection clause is mandatory, and thus must be enforced under the doctrine of *forum non conveniens*.[24]

---

[19] *Id.* at 1.
[20] *Id.* at 9-10.
[21] *Id.* at 10-11.
[22] R. Doc. 171. Hapag-Lloyd also moves for dismissal of Merzario's crossclaim arguing that Merzario fits the definition of "Merchant" in Expeditor's bill of lading, and thus, Merzario's crossclaim against Hapag-Lloyd is also precluded by the *Himalaya* clause. Merzario did not oppose the motion. Because the motion is well-founded and based on this Court's prior Order & Reasons regarding the applicability of the *Himalaya* clause (R. Doc. 113), the motion is GRANTED, and Merzario's claims against Hapag-Lloyd are DISMISSED WITH PREJUDICE.
[23] R. Doc. 171-4 at 3.
[24] R. Doc. 171-1 at 7-16.

Expeditors does not dispute that the forum selection clause is mandatory.[25] Rather, Expeditors argues that Hapag-Lloyd waived the right to enforce the forum selection clause by filing a motion for summary judgment seeking substantive relief under the *Himalaya* clause against Plaintiff's claim, which filing was inconsistent with any intent on Hapag-Lloyd's part to enforce the forum selection clause and which, thereby, substantially invoked the judicial process causing detriment to Expeditors.[26] Expeditors claims that it would have sought to enforce against Plaintiff the forum selection clause in its bill of lading had it known that Hapag-Lloyd would seek to enforce the forum selection clause in the sea waybill.[27] The bill of lading's forum selection clause provides:

27.     LAW; DISPUTES; VENUE; SEVERABILITY; ETC.

(a)  This Bill of Lading shall be governed by and construed in accordance with the internal Laws of the State of Washington (excluding its Laws relating to conflicts of law), except as the same may be governed by the federal Law of the United States.   MERCHANT IRREVOCABLY CONSENTS TO NON-EXCLUSIVE JURISDICTION AND VENUE FOR LEGAL PROCEEDINGS RELATED TO ALL CLAIMS AND DISPUTES ARISING FROM OR IN CONNECTION WITH THIS BILL OF LADING OR THE GOODS, WHETHER UNDER FEDERAL, STATE, LOCAL, OR FOREIGN STATUTES, REGULATIONS, OR COMMON LAW, IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON OR THE SUPERIOR COURT OF THE STATE OF WASHINGTON SITTING IN KING COUNTY. MERCHANT AND CARRIER HEREBY CONSENT TO THE COMMENCEMENT AND TRANSFER OF ALL SUCH LEGAL PROCEEDINGS TO SUCH COURTS.  Merchant irrevocably  consents to the commencement and to the transfer of venue in any or all such actions to any other venue in which Carrier is party to a legal action brought by itself or a third party that arises from or is connected with the Goods, their carriage, loading, unloading, handling, or storage, or loss, damage, or delay related to any of the Goods.  The Merchant waives all defenses based on inconvenience of forum in all actions commenced in the venues agreed to under this Bill of Lading. …[28]

---

[25] R. Doc. 184.
[26] *Id.* at 4-9.
[27] *Id.*
[28] *Id.* at 13 (citing R. Doc. 171-3 at 16-17).

Expeditors states that it forwent filing a motion to transfer this action to the United States District Court for the Western District of Washington because it believed that Hapag-Lloyd had consented to going forward in this Court, and it was preferable to have the entirety of the case and all parties before a single tribunal.[29]

A forum selection clause pointing to a state or foreign forum is properly enforced through the doctrine of *forum non conveniens*. *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 60 (2013). Ordinarily, in ruling on such a motion the district court considers various private- and public-interest factors. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766 (5th Cir. 2016). "The private-interest factors include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* at 766-67 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). "The public-interest factors include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 767 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6). The plaintiff's choice of forum is usually given significant, but not determinative, weight. *Id.* (citing *Atl. Marine,* 571 U.S. at 62 n.6).

However, if there is a mandatory, enforceable forum selection clause, the plaintiff's choice of forum is given no weight, and the plaintiff must establish that dismissal is unwarranted.

_____

[29] *Id.* at 10-14. Expeditors further argues that, if the forum selection clause in the sea waybill is enforced, the forum selection clause in the bill of lading should also be enforced requiring Plaintiff to file its claims against Expeditors in Germany. *Id.* Toward that end, Expeditors has filed its own motion to dismiss Plaintiff's claims in the event that Hapag-Lloyd's motion to dismiss is granted. R. Doc. 195. Because this Court is denying Hapag-Lloyd's motion to dismiss on the forum-selection-clause ground, Expeditors' motion to dismiss is DENIED AS MOOT.

*Id.* (citing *Atl. Marine*, 571 U.S. at 63-64). Also, the district court should consider only the public-interest factors, and not the private-interest ones, because the private-interest factors are deemed to weigh entirely in favor of the preselected forum. *Id.* (citing *Atl. Marine*, 571 U.S. at 64). Because the public-interest "'factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 64).

In this case, the forum selection clause in the sea waybill is mandatory and exclusive ("any claim or dispute arising under the Sea Waybill **shall** be … determined in the Hamburg courts **to the exclusion of the jurisdiction of the courts of any other place**"). Thus, Hapag-Lloyd contends that under *Atlantic Marine* the *forum non conveniens* analysis heavily favors enforcement of the forum selection clause and dismissal of the case in favor of the German forum. But, Expeditors argues that this Court need not engage in the *forum non conveniens* analysis because Hapag-Lloyd waived its right to enforce the forum selection clause.

The Fifth Circuit has articulated two possible tests for analyzing whether a party has waived its right to enforce a forum selection clause.

> One line of authority … applies a traditional waiver standard to forum selection clauses. These cases hold that waiver of a forum selection clause requires: (1) an existing right, benefit, or advantage; (2) actual or constructive knowledge of its existence; and (3) actual intent to relinquish that right. Waiver can also occur if a party engages in conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.

*SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 426 (5th Cir. 2016) (internal quotations and citations omitted). When applying this line of authority, courts examine whether or not a party previously raised the forum selection clause argument within the litigation. *Martin v. Scenic Tours USA Inc.*, 2018 WL 6680929, at *8 (E.D. La. Dec. 19, 2018) (citing *Wellogix, Inc. v. SAP Am., Inc.*, 648 F. App'x 398, 401 (finding that defendant

successfully enforced the clause by using it in other litigation and preserving rights when filing documents in the current case); *GP Plastics Corp. v. Debis Fin. Servs., Inc.*, 108 F. App'x 832, 836-37 (5th Cir. 2004) (finding forum selection clause not waived where defendant already filed litigation in the forum selected in the clause)).  Failure to raise the forum selection clause in a motion to dismiss can be deemed conduct inconsistent with the intent to enforce it, so as to indicate waiver.  *Id.* (citing *Hampton v. Equity Tr. Co.*, 736 F. App'x 430, 436 (5th Cir. 2018) (quoting *SGIC Strategic*, 839 F.3d at 426); *Am. Int'l Grp. Europe S.A. (Italy) v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369, 381 (S.D.N.Y. 2010) (finding waiver of the forum selection clause where the "[defendant] made no mention of the clause in its answer, nor did it at any time file a motion to dismiss based on the forum selection clause"); *Money For Lawsuits V LP v. Rowe*, 2012 WL 1068171, at *5 (E.D. Mich. Jan. 23, 2012) (finding waiver where defendants failed to raise the issue in their answers or a motion to dismiss or transfer the case); *In re Deleas Shipping Ltd.*, 1996 AMC 434 (W.D. Wash. 1995) ("forum selection clause will be deemed waived if the party invoking it has taken actions inconsistent with it, or delayed its enforcement, and other parties would be prejudiced"); *In re Rationis Enters., Inc. of Panama*, 1999 WL 6364, at *2 (S.D.N.Y. Jan. 7, 1999)).

The second line of authority for analyzing waiver essentially applies

> the test used by federal courts to assess waiver of arbitration clauses, which are a species of forum selection clause.  Under this test, the party to the forum selection clause waives its right if it (1) substantially invokes the judicial process in derogation of the forum selection clause and (2) thereby causes detriment or prejudice to the other party.

*SGIC Strategic*, 839 F.3d at 426-27 (internal quotations and citations omitted).  In applying this line of authority, courts examine the extent to which a party has invoked the judicial process to the other party's detriment.  *Martin*, 2018 WL 6680929, at *8 (citing *Hampton*, 736 F. App'x at 435).  "To invoke the judicial process, a 'party must, at the very least, engage in some overt act

8

in court that evinces a desire to resolve the ... dispute through litigation ....'" *Hampton*, 736 F. App'x at 435 (quoting *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010)).

Pursuant to either line of authority, Hapag-Lloyd waived its right to enforce the forum selection clause. By filing a motion for summary judgment on Plaintiff's claims against it, Hapag-Lloyd substantially invoked the judicial process to the detriment of all other parties in the litigation. Under the bill of lading Expeditors issued to Plaintiff, Plaintiff irrevocably consented to the commencement and transfer of venue to any venue where a legal action may be brought by Expeditors or any third party, such as Hapag-Lloyd, that arises in connection with Plaintiff's goods, their carriage, loading, unloading, handling or storage, or loss, damage or delay related to Plaintiff's goods. Thus, pursuant to the forum selection clause in the bill of lading, Plaintiff consented to the German forum mandated by the forum selection clause in the sea waybill Hapag-Lloyd issued to Expeditors for the shipment of Plaintiff's goods.[30] Consequently, before seeking the substantive relief it was afforded by the *Himalaya* clause in the bill of lading, Hapag-Lloyd had the right to ask, and could have asked, to have this case dismissed in favor of the German forum pursuant to the forum selection clause in the sea waybill. It did not. Instead, Hapag-Lloyd chose to adjudicate its substantive relief from Plaintiff's direct claim under the *Himalaya* clause. This was a substantial invocation of this Court's jurisdiction. *See Hampton*, 736 F. App'x at 436 (describing summary judgment motion as an "overt act" for judgment on the merits, evincing a desire to resolve the dispute through litigation in the forum where the motion was brought) (citations omitted).

---

[30] In addition, because Expeditors, as the non-vessel operating common carrier, was acting as agent of the cargo owner, Plaintiff, when it engaged Hapag-Lloyd, as vessel operating common carrier, to ship Plaintiff's goods, Plaintiff was bound by the vessel operating common carrier's billing of lading (here, the sea waybill), including its forum selection clause favoring Germany. *See, e.g. Am. Home Assurance Co. v. M/V Hanjin Marseilles*, 2004 WL 1197240 (S.D.N.Y. June 1, 2004); *Jockey Int'l, Inc. v. M/V Leverkusen Express*, 217 F. Supp. 2d 447, 457 (S.D.N.Y 2002) (citing *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 294 F.3d 1171, 1177 (9th Cir. 2002)).

Like Hapag-Lloyd, Expeditors was operating under both the bill of lading and the sea waybill, and thus both forum selection clauses, in regard to Plaintiff's goods. It was reasonable for Expeditors both to believe that Hapag-Lloyd had waived its right to a German forum by seeking substantive relief from this Court, and then, on this basis, to forgo Expeditors' own right to seek transfer or dismissal of this case in favor of the federal or state forum in Washington. In this way, Hapag-Lloyd's conduct in seeking relief in this Court pursuant to the *Himalaya* clause caused detriment or prejudice to Expeditors. Accordingly, under the second line of waiver cases, Hapag-Lloyd waived its right to a German forum provided by the forum selection clause of the sea waybill.

The same result obtains under the first line of waiver cases. Hapag-Lloyd's pursuit of a motion for summary judgment raising the bar of the *Himalaya* clause against Plaintiff's claims was inconsistent with any intent on its part to enforce the forum selection clause in the sea waybill, and it was reasonable for Expeditors to believe that Hapag-Lloyd had relinquished its right to enforce the clause. Hapag-Lloyd's invocation of the judicial process amounted to an intentional acquiescence to have this entire dispute resolved in a single tribunal. But Hapag-Lloyd insists that its assertion of a forum selection clause defense on May 30, 2017, in answer to Expeditors' crossclaim placed the parties on notice of Hapag-Lloyd's intent to enforce the clause.[31] While this action is not without significance, *see Indus. Print Techs, LLC v. Canon U.S.A., Inc.*, 2014 WL 7240050, at *3 (E.D. Tex. Dec. 19, 2014), pleading a defense is not alone sufficient to preserve it when a party takes other action (*e.g.*, seeking merits relief) evincing an intent to relinquish its right under the forum selection clause. Nor can a party await the result of a merits ruling it has sought before making a decision to pursue or forgo a forum selection right.

---

[31] R. Doc. 191 at 3.

The intent required by the cases demands more consistency than such a "when-it-suits-me" approach to the assertion of a forum selection right. Therefore, Hapag-Lloyd has waived its right to enforce the forum selection clause under this test as well.

The Court is quite cognizant of the dramatic effect the existence of a mandatory, enforceable forum selection clause has on the *forum non conveniens* analysis. *See Weber*, 811 F.3d at 767 (citing *Atl. Marine*, 571 U.S. at 63-64 ("a valid forum-selection clause should be given controlling weight in all but the most exceptional cases")). But, a party cannot avail itself of its right under such a clause after it has manifested its intention to waive, and has acted to waive, its right by pursuing substantive relief in a forum other than the one selected in the clause. This is especially true where, as here, both waiver tests are easily satisfied. *See Hampton*, 736 F. App'x at 436. Hence, Hapag-Lloyd's motion to dismiss is DENIED as to enforcing the forum selection clause.

## B. Motions for Summary Judgment

### 1. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits

supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a

form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### 2. Expeditors' Motion for Summary Judgment (R. Doc. 120)

Expeditors seeks summary judgment on the ground that, under COGSA, its potential liability to Plaintiff is limited to $500 per "package."[32] Expeditors argues that the two shipping containers supplied and packed by Plaintiff constitute the two packages, and thus, Expeditor's potential liability is limited to $1,000.[33]

A bill of lading is a contract between a shipper and a carrier for transportation of goods. *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18-19 (2004) ("A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage."). The contract "enunciates the responsibility of the carrier to deliver enumerated goods to a specified location." *Interocean S.S. Corp. v. New Orleans Cold Storage & Warehouse Co.*, 865 F.2d 699, 703 (5th Cir. 1989). As contracts of adhesion, bills of lading are "strictly construed against the carrier." *Id.* (quoting *Allied Chem. v.*

---

[32] R. Doc. 120-1 at 6-7.
[33] *Id.* at 7-10. Alternatively, Expeditors argues that the number of packages is either the six wooden storages crates found in one of the shipping containers, plus the other shipping container, or the six wooden storage crates in one shipping container and the twenty-two wooden and cardboard boxes in the other shipping container. *Id.* at 10-12.

*Companhia de Navegacao*, 775 F.2d 476, 482 (2d Cir. 1985)).  However, "contracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties."  *Kirby*, 543 U.S. at 31.

"COGSA … applies by force of law (*ex propio vigore*) to contracts for the carriage of goods by sea to or from foreign ports and U.S. ports."  R. FORCE, ADMIRALTY AND MARITIME LAW 61 (2d ed. 2013).  Under COGSA, a carrier's liability is limited to $500 per package, or per customary freight unit for goods not shipped in a package, "unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading."  46 U.S.C. § 30701 note § 4(5).  For a carrier to benefit from the COGSA limitation of liability, the carrier must give the shipper a fair opportunity to avoid the limitation "by declaring the package's actual value and paying additional ad valorem freight."  *Indust. Mar. Carriers (Bahamas), Inc. v. Siemens Westinghouse Power Corp.*, 67 F. App'x 252, at *1  (5th Cir. 2003) (citing 46 U.S.C. § 1304(5); *Brown & Root, Inc. v. M/V Peisander*, 648 F.2d 415, 420 (5th Cir. 1981)).  "Alternatively, the shipper may accept COGSA limitation, profit from a lower freight rate, and procure insurance independently or not at all."  *Perusahaan Pertambangan Minyak Dan v. Chainat Navee M/V*, 136 F. Supp. 2d 586, 589 (E.D. La. 2001).  "The economic choice of whether to accept COGSA limitation lies with the shipper."  *Id.*

"The carrier bears an initial burden of showing it offered the shipper a fair opportunity to avoid the limitation."  *Tradearbed Inc. v. W. Bulk Carriers K/S,* 374 F. App'x 464, 473 (5th Cir. 2010) (citing *Couthino, Caro & Co. v. M/V Sava,* 849 F.2d 166, 169 (5th Cir. 1988)).  If the carrier satisfies the initial burden, "the burden of proof shifts to the shipper to demonstrate that a fair opportunity did not in fact exist."  *Couthino, Caro & Co.*, 849 F.2d at 171 (quoting *Gen. Elec. Co. v. M/V Nedlloyd,* 817 F.2d 1022, 1029 (2d Cir. 1987)).

Expeditors has demonstrated that it gave Plaintiff multiple opportunities to avoid limitation, and Plaintiff has not proved that a fair opportunity did not in fact exist. On February 29, 2016, prior to Expeditors' retrieving the containers from Plaintiff in Houma, Louisiana, Expeditors' export supervisor, Kristin Adkins ("Adkins"), sent a blank electronic form of the Shipper's Letter of Instructions ("SLI") to Susan Fielding ("Fielding"), Plaintiff's treasurer, custodian of records, and financial analyst, and asked Fielding to complete and return the form before the scheduled pickup date of March 7, 2016.[34] Because Fielding did not timely complete the SLI, Adkins re-sent it on March 7, 2016.[35] The SLI was also available, with instructions, on Expeditors' website.[36]

The SLI gave Plaintiff notice of Expeditors' limitation of liability and described Plaintiff's opportunity to avoid it by declaring a higher value and paying a higher shipping rate.[37] The SLI states:

> **NOTIFICATION OF TERMS & LIMITATION OF LEGAL LIABILITY**
> Please note that shipments are accepted subject to the terms and conditions set forth in the contract of carriage and any applicable tariff. These terms include industry standard limitations on legal liability for loss, damage or delay. A summary of these terms, including the applicable limitations on liability, are included with the SLI ...
>
> ....
>
> **DECLARING VALUE TO INCREASE LEGAL LIABILITY**
> If you do not wish to accept the limits on the carrier's legal liability, you have the opportunity to set a higher value by entering this amount in the box labeled Declared Value for Carriage and thereby agreeing to pay the applicable additional cost of transportation. ...[38]

---

[34] R. Doc. 169-2 at 1-2.
[35] *Id.* at 2.
[36] *Id.*
[37] *Id.* at 6-8.
[38] *Id.* at 6.

The third page of the SLI is titled "NOTICE CONCERNING CARRIER'S LIMITATION OF LIABILITY," and informs the shipper that COGSA may be applicable.[39] It also specifies that "the carrier's liability is limited to U.S. $500.00 per package or, for goods not shipped in packages, per customary freight unit[,]" and that **"[h]igher compensation will be paid only when the shipper declares a higher value for the goods shipped and so states in the ocean bill of lading and additional freight is paid**. In that case, the amount of the declared value shall substitute for that limit."[40]

On March 7, 2016, Fielding returned the SLI form to Adkins, along with a list of the items being shipped.[41] The completed SLI described the items as "wireline and slickline oil tools" with an "Export Value" of $2,244,000.[42] The box for the "Declared Value for Carriage" was left blank, as was the box in which Plaintiff was to indicate whether it requested insurance, and in what amount.[43]

Plaintiff had another opportunity to declare a higher value for the cargo on the bill of lading. On March 28, 2016, Expeditors issued a house ocean bill of lading to Plaintiff, which Adkins sent to Fielding.[44] The draft bill of lading stated that the shipment consisted of two containers of drilling equipment that were loaded and counted by Plaintiff, the shipper.[45] In two places on its face, the bill of lading gave notice of the shipper's right to declare a higher value and pay a higher freight charge.[46] First, there is a space to declare a higher value:

SHIPPER'S DECLARED VALUE: $_____
IF MERCHANT ENTERS A VALUE, CARRIER'S LIMITATION OF

---

[39] *Id.* at 8.
[40] *Id.* (emphasis added).
[41] R. Doc. 159-1 at 11-48.
[42] *Id.* at 11
[43] *Id.*
[44] R. Doc. 120-4 at 1 & 4.
[45] *Id.* at 4.
[46] *Id.*

LIABILITY SHALL NOT APPLY AND THE AD VALOREM RATE WILL BE CHARGED.[47]

Second, the bill of lading states:

> The Goods, or container(s) or package(s) said to contain the cargo herein mentioned, to be carried subject to all the terms and conditions of this Bill of Lading by the vessel named herein or any substitute at the Carrier's option and/or other means of transport, from the place of receipt or the port of loading to the port of discharge or the place of delivery shown herein and there to be delivered unto order or assigns. In accepting this Bill of Lading, Shipper … agrees to be bound by all stipulations, exceptions, terms, and conditions on the face and back hereof, whether written, typed, stamped, or printed, as fully as if signed by the Shipper, any local custom or privilege to the contrary notwithstanding, ***and understands the Carrier's liability will be limited*** as set forth in Article 22,[48] ***unless Shipper declares ad valorem valuation in excess of $500 per container, per package, or in the case of Goods not shipped in packages, per customary freight unit, and pays extra freight as required by the Carrier's published tariff***.[49]

Further, stamped on the left side of the bill of lading in all capital letters is the notice:

"ELECTRONIC IMAGE SUBJECT TO TERMS AND CONDITIONS."[50] Expeditors' terms and conditions were published to the shipping community and available to Plaintiff on Expeditors' website.[51] Expeditors' standard terms and conditions specifically incorporate COGSA's limitation of liability stating in Clause 6(a):

> Carrier [Expeditors] shall not be liable for loss or damage in an amount exceeding US $500 lawful money of the United States per package, or in case of Goods not shipped in packages, per Shipping Unit, unless a higher declared value has been made and noted, and extra Charges paid, in accordance with Clause 6(b) hereof.[52]

Clause 6(b) provides, in pertinent part:

---

[47] *Id.*

[48] Expeditors states that "[t]he references to the reverse of the bill of lading and Article 22, date to the days of paper (not electronic) bills of lading. The electronic form bill of lading in use at the time of [Plaintiff's] shipment did not have terms on the reverse side, but … the terms and conditions applicable to the ocean carriage were set forth in the Long Form Ocean Bill of Lading …." R. Doc. 169 at n.2.

[49] R. Doc. 120-4 at 4. (emphasis added).

[50] *Id.*

[51] R. Doc. 169 at 2. Notably, the uniform resource locator (url), or web address, for Expeditors' website (www.expeditors.com) is a part of the contact information in Adkins' email signature block appearing at the bottom of each email from Adkins to Fielding.

[52] R. Doc. 120-4 at 9.

(i)  To secure a due proportion between the charges it earns and the amount for which it may be responsible in the event of loss or damage to the Goods, Carrier has established its regular, lower rates and charges based on the limited value of the Goods as agreed herein.  ***Carrier's liability may be increased to a higher value by a declaration in writing of the value of the Goods by the shipper before delivery to Carrier of the Goods for shipment, such higher value being inserted on the front of this Bill of Lading in the space provided and, if required by Carrier, extra freight, premiums, and other Charges paid.  Unless the Merchant so declares the value of the Good and pays ad valorem charges, the Merchant is deemed to have elected the regular, lower charges of Carrier, and to have agreed that, for purposes of computing any liability of Carrier, the limitations of liability set forth in Clause 6(a) hereof shall apply***.  In such case if the actual value of the Goods shall exceed such declared value, the value shall nevertheless be deemed to be the declared value and Carrier's liability, if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.[53]

In a previous Order & Reasons, this Court held that the bill of lading incorporated Expeditors' terms and conditions, that Plaintiff had notice of those terms and conditions, and that Plaintiff approved the bill of lading by email on May 27, 2016.[54]  Plaintiff did not make any changes to the draft bill of lading before approving it.  Specifically, Plaintiff did not declare a higher value for the cargo or agree to pay an ad valorem rate for the shipping.

The SLI and the bill of lading, which incorporates Expeditors' standard terms and conditions, demonstrate that Plaintiff was provided sufficient notice of the per package limitation and a fair opportunity to declare a higher value for the cargo on at least two occasions, but did not do so.  Plaintiff argues that its stating on the SIL that the cargo's export value was $2,244,000 should be deemed to also be the declared value for the purpose of limitation, and that Expeditors should have included that valuation and the packing list on the bill of lading.[55]  This argument is unavailing.  The SIL, and its instructions, clearly indicate that the declared value is different than the export value, and that Expeditors' limitation would only be invalidated by the

---

[53] *Id.* at 10 (emphasis added).
[54] R. Doc. 113 at 11 (citing R. Doc. 112-3 at 13).
[55] R. Doc. 159 at 12.

shipper's indicating a higher declared value and paying the ad valorem shipping rate. *See Unimac Co. v. C.F. Ocean Serv., Inc.*, 43 F.3d 1434, 1438 n.7 (11th Cir. 1995) (rejecting argument that shipper's letter of instruction stating the cargo's value satisfied COGSA requirement for stating excess value). Further, COGSA and the bill of lading place the burden on the shipper to declare a higher value on the bill of lading itself, which Plaintiff did not do. Had it been Plaintiff's intention to avoid the COGSA limit by paying a higher shipping rate, it could have changed the draft bill of lading to declare a higher value, as it was repeatedly instructed to do. Plaintiff made no changes and approved the bill of lading as drafted. As did the Eleventh Circuit in *Unimac*, this Court rejects the proposition that the SIL should be deemed to supply the higher value the shipper omitted from the bill of lading. This outcome "encourages precision in filling out a key aspect of important documents, and the more consistently it is followed, the more it should minimize disputes." *Seguros "Illimani" S.A. v. M/V Popi P*, 929 F.2d 89, 94 (2d Cir. 1991) (Newman, J.).

Plaintiff also argues that it did not have a fair opportunity to discuss shipping rates and cargo values, and that Expeditors billed Merzarios, not Plaintiff, for the shipping.[56] Expeditors' SIL and bill of lading, along with the standard terms and conditions, all clearly state that the shipper must declare a higher value for the cargo and pay an ad valorem shipping rate to avoid the limitation of liability. Expeditors published its ad valorem tariff with the Federal Maritime Commission, which put Plaintiff on notice that it could declare a higher value for the cargo. *Perusahaan Pertambangan Minyak Dan*, 136 F. Supp. 2d at 589 (finding that publishing a tariff with the Federal Maritime Commission placed shippers on fair notice that they could declare a

---

[56] *Id.*

higher value for the cargo). There is no evidence that Plaintiff contemplated declaring a higher value or inquired about the ad valorem tariff rate. Therefore, this argument is unpersuasive.

Finally, Plaintiff argues that Expeditors is precluded from enforcing the package limitation of liability because the packages were shipped at the wrong time.[57] Plaintiff contends that the mis-shipment deprived it of the opportunity to obtain insurance for the tools and inspect the packaging before shipment.[58] These arguments are also unpersuasive. Plaintiff did not fill in the box for insurance on the SIL, nor did it pay the premium for the post-shipment insurance offered by Expeditors. Further, Plaintiff purchased and packed the shipping containers itself, and the destination of "Romania," which was indicated on the March 7, 2016 SIL, never changed. There is no communication in the record reflecting that Plaintiff expressed any intention to inspect the packed, delivered, and marked-for-destination containers before shipment. Considering that the bill of lading was issued *after* the shipment and Plaintiff did not declare a higher value for the cargo even then, Plaintiff has not shown that the mis-shipment in any way deprived it of an opportunity to avoid the limitation of liability.

In sum, Expeditors has satisfied its burden of showing that it offered a fair opportunity to Plaintiff to declare the cargo's value and escape the COGSA limitation of liability, but Plaintiff has failed to carry its burden of proving that a fair opportunity did not in fact exist. Instead, the undisputed evidence demonstrates that Plaintiff neglected to avail itself of a fair opportunity

---

[57] *Id.* at 15-17. In doing so, Plaintiff asks the Court to apply the admiralty law's doctrine of "deviation," typically geographic in character, but which "[o]ver time … was broadened to include unauthorized deck carriage as a 'quasi deviation.'" *Marinor Assocs., Inc. v. M/V Panama Express*, 2011 WL 710616, at *6-7 (S.D. Tex. Feb. 18, 2011). However, "[m]ere negligence or gross negligence in the performance of the carrier's duties does not constitute a deviation" as would affect COGSA's limitation of liability. *Id.* (collecting cases); *cf. Unimac Co.*, 43 F.3d at 1437-38 (misdelivery of cargo is not a deviation that bars COGSA protections). Plaintiff cites no case (and the Court has found none) holding that a carrier's shipment of packages at the wrong time amounts to a deviation or quasi-deviation, much less an unreasonable one, especially where, as here, the shipper had an opportunity post-shipment to obtain insurance and declare a higher value on the bill of lading.
[58] *Id.*

Expeditors provided it on multiple occasions to declare a higher value and escape the $500 per package limitation.

COGSA does not define the term "package." *Dewanchand v. Ramsaran Indus. (P) Ltd. v. Ports Am. Tex., Inc.*, 2012 WL 707380 (S.D. Tex. Feb. 24, 2010) (citation omitted). "While the courts attempting to fashion a definition for package have grappled with the definition of 'package,' they have consistently used common-sense in construing the term." *G.E. Power Sys., Inc. v. Indus. Mar. Carriers (Bahamas), Inc.*, 89 F. Supp. 2d 782, 783 (E.D. La. 2000). In this case, Expeditors' standard terms and conditions define "Package" or "Shipping Unit"[59] as follows:

> Where a Container[60] is used to consolidate Goods and such Container is Stuffed[61] by Carrier, the number of packages or Shipping Units stated on the face of this Bill of Lading in the box provided shall be deemed the number of packages or Shipping Units for the purpose of any limit of liability per package or Shipping Unit provided in any applicable international convention or national Law relating to the carriage of goods by sea. ***Except as aforesaid the Container shall be considered the package or Shipping Unit***. ...[62]

It is undisputed that Plaintiff purchased and stuffed the containers in which its items were to be shipped, and the bill of lading, on its face, states that the "number of packages" is two containers. Therefore, under the applicable contractual definition, the containers themselves were the packages, and Expeditors' liability is limited to $500 each for two packages, or a total of $1,000.

---

[59] "Shipping Unit" means "each physical unit or piece of cargo not shipped in a package including articles or things of any description whatsoever, except Goods shipped in bulk and irrespective of the weight or measurement unit employed in calculating freight charges, and includes the term 'customary freight unit' as used in COGSA (where applicable by its own force or by agreement), and, otherwise, 'unit' as used in the Hague Rules, the Hague-Visby Rules, or any national legislation adopting the Hague Rules or the Hague-Visby Rules." R. Doc. 120-4 at 7.

[60] "Container" means "any container, trailer, transportation tank, lift van, flat, pallet, or any similar article of transport used to hold or consolidate goods." *Id.* at 6.

[61] "Stuffed" means "filled, consolidated, packed, loaded, or secured, and references to 'Stuffed' include placing in or on the relevant Container." *Id.* at 7.

[62] *Id.* at 10 (emphasis added).

### 3. Hapag-Lloyd's Alternative Motion for Summary Judgment (R. Doc. 171) Regarding COGSA's $500 Per Package Limitation

Hapag-Lloyd also seeks summary judgment on the ground that its potential liability to Expeditors should be limited under the terms of the sea waybill, which incorporates COGSA's $500 per package limitation of liability.[63] Hapag-Lloyd points out that the description of the goods in the sea waybill is nearly identical to that included in Expeditors' bill of lading.[64] Thus, Hapag-Lloyd argues that its potential liability to Expeditors is limited to $500 each for the two containers, or a total of $1,000.[65]

Expeditors does not oppose the motion.[66] Instead, Expeditors submits that "because the arguments and the facts are the same [as its motion for summary judgment on limitation of liability] both motions on the package limit should be consistent."[67] The Court agrees. Thus, for the same reasons stated in regard to the limitation of Expeditors' liability to Plaintiff, Hapag-Lloyd's motion for summary judgment is GRANTED, and its potential liability to Expeditors is limited to $1,000.

### 4. Zurich's Motion for Summary Judgment (R. Doc. 172)

In its second amended complaint, Plaintiff alleges that Zurich provided to Expeditors cargo insurance, under policy number OC-5843869, that was in full force and effect at the relevant time.[68] Plaintiff sued Zurich under Louisiana's direct-action statute, La. R.S. 22:1269, alleging that Zurich, as Expeditors' insurer, is liable to Plaintiff for Expeditors' alleged wrongdoing.[69] Plaintiff also alleges that Zurich is liable "directly to [Plaintiff] for its losses

---

[63] R. Doc. 171-1 at 19-21.
[64] *Id.*
[65] *Id.*
[66] R. Doc. 184 at 14.
[67] *Id.*
[68] R. Doc. 158 at 2.
[69] *Id.* at 15-16.

sustained, regardless of Expeditors' liability to [Plaintiff]" – an allegation Zurich understands to be a first-party insurance claim.[70]  Zurich moves for summary judgment on Plaintiff's first-party insurance claim against it arguing that Plaintiffs never paid a premium to procure first-party insurance from Zurich.[71]

Plaintiff admits that it never paid a premium to secure first-party insurance from Zurich.[72] Rather, Plaintiff argues that Expeditors informed it that it had insurance for the cargo and Adkins sent Fielding information regarding Expeditors' policy issued by Zurich.[73]  This information does not establish that Plaintiff has a first-party insurance policy issued by Zurich, for which it admits it did not pay a premium, but rather that Expeditors had an insurance policy that may benefit Plaintiff.  In other words, it is support for bringing a third-party, direct-action claim, not a first-party insurance claim.   Because there is no evidence that Plaintiff procured its own insurance policy from Zurich, Zurich's motion for summary judgment is GRANTED as to any first-party insurance claim Plaintiff asserts against Zurich.

## III.    CONCLUSION

Accordingly,

IT IS ORDERED that Hapag-Lloyd's motion to dismiss Expeditors' crossclaims (R. Doc. 171) is DENIED.

IT IS FURTHER ORDERED that Hapag-Lloyd's motion to dismiss crossclaims of Merzario (R. Doc. 171) is GRANTED as unopposed, and those claims are DISMISSED WITH PREJUDICE.

---

[70] *Id.* at 16.
[71] R. Doc. 172.
[72] R. Doc. 183 at 1.
[73] *Id.* at 5-8.

IT IS FURTHER ORDERED that Hapag-Lloyd's motion for partial summary judgment to limit recoverable damages (R. Doc. 171) on Expeditors' claim against it is GRANTED.

IT IS FURTHER ORDERED Expeditors' motion to dismiss the Plaintiff's claims (R. Doc. 195) is DENIED AS MOOT.

IT IS FURTHER ORDERED that Zurich's motion for summary judgment (R. Doc. 172) is GRANTED, and Plaintiff's claims against Zurich related to an alleged first-party cargo insurance policy are DISMISSED WITH PREJUDICE.[74]

IT IS FURTHER ORDERED Expeditor's motion for partial summary judgment to limit Plaintiff's recovery to $500 per package (R. Doc. 120) is GRANTED.

New Orleans, Louisiana, this 10th day of June, 2019.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[74] Plaintiff's direct-action claim against Zurich was not implicated by Zurich's motion, and therefore, is not affected by this ruling.